## DENNISTON v. UNITED STATES.
### No. 1147.

District Court, S. D. Alabama, S. D.
March 15, 1938.

Inge & Stallworth, of Mobile, Ala., for plaintiff.

Leo. H. Pou, Asst. U. S. Atty., of Mobile, Ala.

McDUFFIE, District Judge.

The evidence in this cause having been heard by this court, without a jury, the court makes the following findings of fact:

1. Plaintiff, Harold S. Denniston, is a resident of Mobile, Ala., in the Southern Division of the Southern District of Alabama, and was such resident at and before the filing of this suit.

2. During the month of July, 1930, an assessment of $500 was made against Harold S. Denniston by the Bureau of Internal Revenue as the tax on an initiation fee of $5,000 claimed by the Bureau to have been paid by said Denniston for membership in the Tombigbee Club, and an assessment of $20 was made against him as the tax on membership fees or dues in said club claimed to have been paid by him. Said tax assessments were made for the period from July, 1929, to March 1930, in-clusive. Subsequently, on account of non-payment of the total of $520 so assessed, a 5 per cent. penalty amounting to $26 was also assessed against Denniston, making total assessments of $546 against him.

3. On December 6, 1932, Denniston paid $546, covering said taxes and penalty. A claim for refund of said amount was filed by him with the Commissioner of Internal Revenue on January 17, 1933. More than six months expired after filing said claim for refund before the date (June 19, 1934) of filing this suit in the District Court of the United States for the Southern District of Alabama, Southern Division.

4. In May, 1927, the partnership of Everett & Boykin, of Mobile, Ala., owned a tract of land of about 8,000 acres in Washington county, Ala., which was generally known as the "Douglas Tract." As this tract afforded excellent hunting and fishing, Mr. Frank W. Boykin of that firm conceived the idea of selling the land for use by a club. To accomplish this purpose he secured the services of one Hiram H. Maynard, of Chicago.

5. The original intention of Messrs. Maynard and Boykin was to organize a club, either as a corporation or an unincorporated association, and to secure 70 subscriptions of $5,000 each to be applied to the purchase of said property by the club. On or about September 15, 1927, a subscription agreement was entered into by several persons, including Mr. Denniston, wherein each agreed to subscribe for a share of stock or a membership in the club and to pay to the club when organized the sum of $5,000 in payment of the same. There was a provision in the subscription agreement that unless on or before March 1, 1928, there were received at least 25 subscriptions any subscriber might, at his election, terminate his subscription.

6. As the amounts subscribed were received by Maynard, they were turned over to Boykin to be held by him until 25 membership subscriptions were received. Maynard was unable to secure the full number of 25 subscribers by March 1, 1928. However, Denniston did nothing to terminate his subscription and efforts were continued after that date by Maynard and others to obtain club members.

7. The Tombigbee Club was incorporated on July 3, 1929, by certificate of incorporation addressed to and filed with the judge of probate of Washington county,

Ala. Club by-laws were attached to and formed a part of the certificate. The object and purposes of the club, among others, were stated to be: "The conduct of a social club, the social entertainment of its members, the promotion of their interests in fishing, hunting, swimming, shooting, boating, and sports of all kinds."

8. Harold S. Denniston was listed in the certificate of incorporation as one of 15 charter members of the club. On a date which is not shown by the evidence he received a certificate of membership in the club, which he indorsed and turned over to F. W. Boykin. From time to time he attended meetings at the clubhouse, played bridge with other members of the club, and engaged in their social activities generally, except that he was not a hunter and did not participate in the hunts held by the other members. Denniston testified that he did not know until a few days before the trial of this case that the club had been incorporated, and that he was listed as one of the charter members; however, at least two letters were written by the Commissioner of Internal Revenue to Denniston, stating that the club had been legally incorporated in Washington county, Ala., and that Denniston was listed as one of the charter members.

9. Denniston acted as treasurer of the club for a number of months, from, to wit, February to July, 1930. Under the by-laws filed with and made a part of the certificate of incorporation, only members of the board of directors were eligible to serve as officers of the club, including treasurer, and only members of the club were eligible for election as directors.

10. As treasurer of the club, Denniston collected membership assessments or dues of $200 each from approximately 20 members of the club during the months of March and April, 1930. He deposited the amounts so collected in the American National Bank & Trust Company of Mobile, Ala., to the credit of "The Tombigbee Club." His own membership fee or assessment of $200 was included in the number and was so deposited on March 10, 1930.

11. The $5,000 initiation fees of Frank W. Boykin and Robert M. Boykin were not paid to the club in cash. None of the initiation fees were paid to the club, as such, but they were paid to Frank W. Boykin and applied by him upon the purchase price of the 8,000 acres of land which was to be used and which was used by the club as a hunting preserve. As part owners of the land, the two Boykins were to pay for their membership out of their profits on the sale of the land. The land had cost $29,000 and the agreed sale price, after paying commissions to Maynard and another agent, was $175,000.

12. Denniston and Frank W. Boykin were close friends and were associated together in several business enterprises. Boykin had promoted the sale of more than half of the capital stock in a bank organized by Denniston and of which Denniston became president. Much of that stock was sold to men who later became members of the Tombigbee Club. Boykin became indebted to Denniston for large amounts of money loaned him from time to time. On one occasion when a man named Sloan failed to pay his $5,000 note, which had been given in payment of his initiation fee in the club, Denniston, at Boykin's request, paid the note at a Mobile bank and took the same as security for his loan.

13. Denniston was familiar with all of Frank Boykin's plans for organizing the club, and testified that he subscribed for a membership for the purpose of assisting Mr. Boykin with his "deal." He assisted Boykin in his efforts to establish the club and sell memberships to visitors from the North, and on several occasions entertained the club members or prospective members with trips on his yacht.

14. After a deputy collector of internal revenue interviewed Denniston, Boykin, and others in July, 1930, in an effort to collect taxes on their initiation fees and assessments to the club, the Tombigbee Club, as such, was abandoned and a new corporation was organized under the name the Tombigbee Land & Live Stock Company, which corporation acquired the title to the land which was to have been acquired by the Tombigbee Club. The Tombigbee Land & Live Stock Company was wholly different from the "Tombigbee Club" in that it purported to be a land and timber corporation; with no social or sporting purposes.

I. It is the plaintiff's contention that, because 25 subscribers were never obtained by the promoter, Maynard, the proposed club did not attain a legal existence. However, under the subscription agreement the requirement of 25 members was not absolute, and each subscriber was bound by his subscription agreement unless and until, by affirmative action on his part, he canceled

it or withdrew from it; in other words, failure on the part of Maynard to obtain 25 memberships did not under the subscription agreement make the subscription void but made it voidable at the election of the individual subscriber.

II. It was not necessary that the club be incorporated in order to render its membership fees taxable under the statute in question. 26 U.S.C.A. §§ 950–952; Bunker Hill Country Club v. United States, Ct. Cl., 9 F.Supp. 52. But when the incorporation papers were filed in compliance with the laws of Alabama, it attained a definite legal existence.

III. The Tombigbee Club was a "social or sporting club or organization," within the meaning of the statute, and initiation fees, dues, and assessments paid by its members were taxable under the statute above mentioned.

IV. The inclusion in the certificate of incorporation of the plaintiff's name as one of the charter members is at least prima facie evidence that he was a member of the club at that time. Fletcher on Corporations, vol. 4, § 1973. The evidence in its entirety, submitted by the plaintiff, is not sufficient to overcome the burden upon him in this regard.

V. The plaintiff was, by his own admission, treasurer of the club, and performed the duties of that office. Under the club's by-laws he could not have held that office without holding membership in the club. Therefore it must be concluded that he was a member of the club.

VI. The item of $200, deposited in the bank to the credit of the Tombigbee Club on March 10, 1930, and shown by the deposit slip as having been paid by plaintiff, amounted to payment by him of a membership assessment or dues, within the meaning of the statute imposing the tax in question.

VII. Whether plaintiff paid an initiation fee of $5,000 in cash, or by contribution of services, or by loan, does not certainly appear. However, the burden was upon the plaintiff to prove that he had not paid the initiation fee by either method specified in the statute. It is the conclusion of the court that the evidence is insufficient to meet that burden.

VIII. The fact that payment may have been made to Frank W. Boykin, or may have been made by a contribution of services to him, or by a loan to him, would not alter the case. Under the statute, an initiation fee includes any "payment, contribution or loan, * * * irrespective of the person or organization to whom paid."

IX. It is the conclusion of the court that the evidence is insufficient to discharge the burden of proof resting upon the plaintiff, and he is therefore not entitled to recover.